BRUCE A. HARLAND, Bar No. 230477
courtnotices@unioncounsel.net
bharland@unioncounsel.net
WILLIAM T. HANLEY, Bar No. 327126
courtnotices@unioncounsel.net
whanley@unioncounsel.net
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
Telephone (510) 337-1001
Fax (510) 337-1023

Attorneys for Plaintiffs
SERVICE EMPLOYEES INTERNATIONAL UNION – UNITED HEALTHCARE WORKERS WEST, et al.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION - RIVERSIDE

SERVICE EMPLOYEES INTERNATIONAL UNION – UNITED HEALTHCARE WORKERS WEST; VANESSA MONDRAGON; GLADYS REYES; RAY VALDIVIA; VANESSA CAMPOS VILLALOBOS,

Plaintiffs,

v.

HCA HEALTHCARE; SAMUEL N. HAZEN, CEO OF HCA HEALTHCARE; RIVERSIDE HEALTHCARE SYSTEM L.P. d/b/a RIVERSIDE COMMUNITY HOSPITAL; JACKIE DeSOUZA-VAN BLARICUM, CEO OF RIVERSIDE COMMUNITY HOSPITAL,

Defendants.

No. 5:20-cv-02054-JWH-KKx

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1. **PUBLIC NUISANCE;**
2. **UNFAIR AND UNLAWFUL BUSINESS PRACTICES;**
3. **NEGLIGENCE;**
4. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; AND**
5. **DECLARATORY JUDGMENT**

Complaint filed August 20, 2020

Demand for Jury Trial

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

FIRST AMENDED COMPLAINT FOR DAMAGES
Case No. 5:20-cv-02054-JWH-KKx

## INTRODUCTION

1. Plaintiff Service Employees International Union – United Healthcare Workers West ("SEIU-UHW" or "Union"), acting on behalf of its members, and Plaintiffs Vanessa Mondragon, Gladys Reyes, Ray Valdivia, and Vanessa Campos Villalobos (collectively, "Plaintiffs") bring this action against HCA Healthcare ("HCA"), HCA's Chief Executive Officer, Samuel N. Hazen, Riverside Healthcare System L.P. d/b/a Riverside Community Hospital ("RCH"), and RCH's Chief Executive Officer Jackie DeSouza-Van Blaricum (collectively, "Defendants") for public nuisance, negligence, and related claims under state law. Defendants, through knowing and reckless acts and omissions, have failed to take reasonable and necessary precautions to protect their employees, patients, visitors, and the community from the harmful effects of COVID-19, thereby facilitating the spread of the virus and putting the surrounding community at an unnecessarily heightened risk of infection.

2. COVID-19 is a highly contagious infectious respiratory disease, caused by a novel (or new) coronavirus that has not previously been seen in humans. Symptoms of COVID-19 include, but are not limited to, fever or chills; cough; shortness of breath; fatigue; muscle or body aches; headache; loss of taste or smell; sore throat; and congestion or runny nose. More severe symptoms include trouble breathing; persistent pain or pressure in the chest; confusion; inability to wake or stay awake; and even death. COVID-19 can also cause severe long-term complications, including damage to the heart, lungs, kidneys, and/or brain. (*See* https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Basics; https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html.)

3. The risk of contracting COVID-19 is particularly high in a hospital environment, where employees (including three of the individual Plaintiffs) work in close proximity to patients suffering from COVID-19. While all health care workers understand that some degree of risk is inherent in their work, Defendants,

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

through various actions and omissions, have created an unnecessarily dangerous work environment for RCH employees during the COVID-19 pandemic, which in turn has created dangerous conditions for patients, visitors, the community, and those who live in the same household as HCA healthcare workers. These actions include, but are not limited to, forcing employees to work without adequate personal protective equipment ("PPE"), including masks, gowns, hairnets, gloves, and facial shields; forcing sick employees to work despite being symptomatic and highly contagious; and pressuring employees not to take reasonable and necessary precautions against exposure to COVID-19—such as frequent or effective sanitization of commonly used medical tools and commonly touched surfaces—if such precautions would harm efficiency and/or productivity.

4. As stated above, this is an action for public nuisance, negligence, and other related claims. Plaintiffs include three (3) individuals who have contracted and suffered symptoms of COVID-19, and one individual whose mother tragically and unnecessarily died after battling the disease for several weeks. These individuals also believe they unknowingly spread the disease to family members or others in the community. Three of the Plaintiffs, as well as the mother of Plaintiff Vanessa Campos Villalobos, became sick while working at Riverside Community Hospital, owned and operated by HCA Healthcare. These individuals are members of SEIU-UHW and work in various job classifications at the Hospital, including Lab Assistant/ Phlebotomist and Patient Safety Observer. Each of the individual Plaintiffs is a member of a racial minority group, making them statistically more likely to contract COVID-19, and more likely to suffer serious symptoms, including death.

5. Plaintiffs seek declaratory and compensatory relief to remedy Defendants' unsafe and unjustifiable treatment of RCH employees during the COVID-19 pandemic, as well as the effect of Defendants' actions and omissions on the greater community. In open disregard of the impacts of the virus on RCH

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

employees, their family members, and those in the community with whom those employees and family members interacted, Defendants, in clear contradiction of their mandate and mission as an acute care hospital, facilitated the spread of COVID-19 among Plaintiffs and others in the community. Defendants' policies and practices, including the acts and omissions alleged herein, thereby created or substantially assisted in the creation of an actionable public nuisance under California Civil Code § 3480. This public nuisance caused substantial, life-threatening harms to the health and safety of Plaintiffs and others in the community. The nuisance created by Defendants' policies and practices also led to the death of a worker from COVID-19, depriving her family of future economic and non-economic benefits.

6. These same actions and/or omissions also constitute negligence in violation of California Civil Code § 1714 with respect to Plaintiff Vanessa Campos Villalobos.

7. Since mid-May 2020, numerous workers at Riverside Community Hospital, including Plaintiffs Vanessa Mondragon, Gladys Reyes, and Ray Valdivia, as well as many family members of these individuals, have tested positive for COVID-19 or have exhibited symptoms consistent with the disease. Another employee of RCH, Sally Lara, the mother of Plaintiff Vanessa Campos Villalobos, died of COVID-19 after contracting the disease while working at RCH. Plaintiff Ray Valdivia, a Patient Safety Observer, was forced to work a shift at RCH while clearly exhibiting COVID-19 symptoms. Mr. Valdivia was pressured into working by hospital management despite explaining and demonstrating his persistent symptoms to the RCH Employee Health Department and his own supervisor. Mr. Valdivia tested positive for COVID-19 hours after finishing this shift and has been on medical leave ever since. Defendants' decision to force Mr. Valdivia to work, while clearly exhibiting symptoms of COVID-19, put countless employees, patients, visitors, and the community at unnecessary risk.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

8. As of August 12, 2020, the California Department of Public Health reported 27,493 confirmed positive cases of COVID-19 and 142 confirmed deaths among healthcare workers statewide. (*See* https://www.cdph.ca.gov/Programs/OPA/Pages/NR20-194.aspx.) Supervisors and hospital management have a duty to mitigate the risks faced by their workers on a day-to-day basis, and not, as at RCH, facilitate the spread of the virus and place workers at additional, unnecessary risks.

9. The spread of COVID-19 among Plaintiffs, their families, and local community members is directly attributable to Defendants' failure to abide by public health recommendations. Defendants' specific actions include, but are not limited to: (1) instructing certain workers with COVID-19 symptoms to continue working even when obviously symptomatic and highly contagious; (2) failing to provide employees with sufficient and adequate personal protective equipment ("PPE") such as face masks, gowns, face shields, and gloves; (3) failing to provide PPE to certain other employees, namely Environmental Services ("EVS") workers, despite these workers being tasked with cleaning the rooms and beds of patients suffering from COVID-19; (4) pressuring certain employees to ignore necessary safety precautions, such as sanitizing and cleaning commonly used equipment and commonly touched surfaces, for the sake of meeting artificial job-related "quotas"; (5) failing to instruct symptomatic workers and co-workers who came into prolonged close contact with workers and/or patients suffering from COVID-19 to self-quarantine for at least 14 days; and (6) when workers have actually tested positive for COVID-19, failing to conduct basic contact tracing or providing timely or adequate notifications to co-workers who were in close contact and are thus at heightened risk of contracting COVID-19 and transmitting it to others.

10. Defendant HCA HEALTHCARE is an American for-profit operator of healthcare facilities with revenues of over $51 billion in 2019. Thus far during the COVID-19 pandemic, HCA has received $1.7 billion dollars in grants under the

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

CARES Act.[1] HCA has also received an additional $4.3 billion dollars in loans from Medicare Accelerated and advance Payments. (*See* https://www.beckershospitalreview.com/finance/1-7b-in-cares-act-cash-went-to-hca.html, https://www.wsj.com/articles/hca-healthcare-profit-rises-on-federal-aid-returning-patients-11595446152; https://www.reuters.com/article/us-health-coronavirus-hospital-billions/billions-in-covid-relief-go-to-biggest-hospital-chains-as-smaller-rivals-await-aid-idUSKBN23G1GI.) The company has over 280,000 employees throughout the United States and United Kingdom. HCA Healthcare operates Riverside Community Hospital.

11. Defendant SAMUEL N. HAZEN is the Chief Executive Officer of HCA, overseeing 186 hospitals, plus more than 2,000 sites that include surgery centers, freestanding emergency rooms, urgent care centers, and physician clinics. Mr. Hazen became the CEO of HCA Healthcare on January 1, 2019, and was paid $26,788,251 million dollars in 2019.

12. Defendant RIVERSIDE HEALTHCARE SYSTEM L.P. d/b/a RIVERSIDE COMMUNITY HOSPITAL ("RCH") is a full-service acute care hospital and emergency room located at 4445 Magnolia Ave, Riverside, California, owned and operated by HCA Healthcare. RCH has thus far received $13.5 million in grants under the CARES Act. (*See* https://data.cdc.gov/Administrative/Provider-Relief-Fund-COVID-19-High-Impact-Payments/b58h-s9zx.)

13. Defendant JACKIE DESOUZA-VAN BLARICUM is the Chief Executive Officer of RCH.

14. Plaintiffs seek declaratory, compensatory, and other statutorily available relief to protect them—and their family and community members—from

[1] The bipartisan CARES Act and the Paycheck Protection Program and Health Care Enhancement Act provided $175 billion in relief funds to hospitals and other healthcare providers on the front lines of the coronavirus response.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

5

FIRST AMENDED COMPLAINT FOR DAMAGES
Case No. 5:20-cv-02054-JWH-KKx

further undue and unnecessary exposures to the COVID-19 virus and to compensate them for the harms they suffered and are continuing to suffer.

## JURISDICTION AND VENUE

15. The Superior Court of the State of California has jurisdiction in this matter because Defendants HCA and RCH regularly conduct business in California. No federal question is at issue in this lawsuit. Plaintiffs' claims are solely based upon California law.

16. Venue is proper in this judicial district and the County of Riverside, California because Plaintiffs Vanessa Mondragon, Gladys Reyes, Ray Valdivia, and Vanessa Campos-Villalobos each reside, performed work, or continue to perform work in the County of Riverside; because Defendant HCA and RCH maintains offices and facilities and transacts business in the County of Riverside; and because Defendants' wrongful conduct that is the subject of this action for public nuisance affects Plaintiffs and other persons similarly situated in the County of Riverside.

## PARTIES

17. Sally Lara, the mother of Plaintiff Vanessa Campos Villalobos, was employed by Defendant HCA at RCH as a part-time Lab Assistant/Phlebotomist when the COVID-19 pandemic first began infecting residents of Riverside County. Ms. Lara, who after becoming aware of the pandemic rarely left her house except to go to work, was exposed to COVID-19 during a work shift at RCH on approximately May 9, 2020. Not at this time or at any other time did Defendants, or any employee or agent of Defendants, warn Ms. Lara—in writing or by other means—of potential exposure. During this shift and many previous shifts, Ms. Lara worked in close proximity to patients suffering from COVID-19, and came into prolonged contact with fellow employees who had been exposed to the virus. Ms. Lara thereafter tested positive for COVID-19 and began suffering severe symptoms, including difficulty breathing. She was placed on a ventilator for two weeks, and ultimately died on June 8, 2020.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

18. This is a picture of Ms. Lara taken before she contracted COVID-19 and died from the disease:

19. Plaintiff Vanessa Campos Villalobos is the daughter of Sally Lara. Ms. Campos Villalobos lived with her mother at the time Ms. Lara contracted COVID-19, and was herself unnecessarily exposed to the virus. Ms. Campos Villalobos therefore developed a reasonable fear of suffering COVID-19-related symptoms. Additionally, because of her mother's death, Ms. Campos Villalobos will lose out on future financial and emotional support.

20. Plaintiff Vanessa Mondragon is currently employed by Defendants as a Lab Assistant/ Phlebotomist at RCH. Ms. Mondragon was exposed to COVID-19 while working a shift at RCH in late June or early July 2020 when she came into prolonged contact with patients and fellow employees who were suffering from COVID-19. Not at this time or at any other time did Defendant HCA, or any employee or agent of Defendant HCA, warn Ms. Mondragon, in writing or by other means, of this exposure. Ms. Mondragon began experiencing symptoms of COVID-19 on July 2 or 3, while at work. She took a COVID-19 test on July 6, and received a positive result on July 13. Ms. Mondragon lives with her boyfriend, who has also suffered COVID-19 symptoms, including loss of sense of taste and smell. Ms. Mondragon's boyfriend began experiencing symptoms immediately after Ms. Mondragon became sick herself. As of August 10, 2020, Ms. Mondragon is still sick.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

21. Plaintiff Raymond Valdivia is currently employed by Defendants as a Patient Safety Observer at RCH. Mr. Valdivia was exposed to COVID-19 at RCH during a work shift in May 2020, when he came into in close proximity with coworkers and patients who had contracted the disease. Not at this time or at any other time did Defendants, or any employee or agent of Defendants, warn Mr. Valdivia, in writing or by other means, of this exposure. On May 19, 2020, Mr. Valdivia began experiencing COVID-19 symptoms, primarily a cough, headache, and shortness of breath. On May 22, Mr. Valdivia took a COVID-19 test. The result was positive. On June 29, Mr. Valdivia was directed to return to work at RCH, despite still experiencing shortness of breath and other symptoms consistent with COVID-19. He explained and demonstrated these symptoms to the RCH Employee Health Department and his supervisor, but was told he had to work unless he tested positive for COVID-19 again. Mr. Valdivia took this second test, but the result did not come back until after his June 29 shift, which he ended up working. The result came back soon after his shift ended. It was again positive. Mr. Valdivia lives with his wife, who also tested positive for COVID-19. She began experiencing symptoms approximately three days after Mr. Valdivia.

22. Plaintiff Gladys Reyes is currently employed by Defendants as a Lab Assistant/ Phlebotomist at RCH. Ms. Reyes worked in close proximity to many coworkers and patients who tested positive for COVID-19. Her primary assignment was to draw blood from patients located in RCH's three "COVID floors." Ms. Reyes herself began feeling symptoms of COVID-19 in June 2020, and tested positive on June 24, 2020. At no time did Defendant HCA, or any employee of Defendant HCA, warn Ms. Reyes, in writing or by other means, of the possibility that she had been exposed to COVID-19. Ms. Reyes' son, who was her sole caretaker while she suffered from the symptoms of COVID-19, lost his job because he had to stay home and take care of her.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

23. Plaintiff Service Employees International Union – United Healthcare Workers West ("SEIU-UHW" or "the Union") is a labor organization within the meaning of 2(5) of the National Labor Relations Act ("NLRA"), as amended, 29 U.S.C. Section 152(5), with its principal place of business in Alameda County, California. SEIU-UHW is the sole representative of a bargaining unit of employees working at RCH which includes three of the aforementioned Plaintiffs, and brings this action on behalf of its members. The Union has associational standing to represent its individual members' interests. (*See, e.g.*, *United Food and Commercial Workers Local 571 v. Brown Group, Inc.* (1996) 517 U.S. 544, 551–53; *Hunt v. Washington State Apple Advertising Comm'n* (1977) 432 U. S. 333, 343; *Brotherhood of Teamsters & Auto Truck Drivers v. Unemployment Ins. Appeals Bd.* (1987) 190 Cal.App.3d 1515, 1521–22 [236 Cal. Rptr. 78].)

24. Plaintiffs are informed and believe, and thereon allege, that Defendant HCA is a Delaware corporation with its principal place of business in Tennessee whose primary business is to operate healthcare facilities, including in the State of California and the County of Riverside. Plaintiffs are informed and believe, and thereon allege, that Defendant operates in California and Riverside County, including at RCH. At all relevant times, Defendant HCA has done business in California and committed the unlawful acts and omissions alleged in this complaint in California. Defendant HCA, its officers and/or agents, are actively involved in the labor relations of its subsidiary, Defendant RCH. Employees of Defendant HCA have been physically present at and participated in collective bargaining negotiations between Defendant RCH and Plaintiff SEIU UHW. During these negotiations, representatives of Defendant HCA and representatives of Plaintiff SEIU UHW have discussed issues of workplace safety, as evidenced in Article 33.1 and 33.4 of the collective bargaining agreement ("CBA") between Plaintiff SEIU-UHW and Defendants HCA and RCH.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

25. Plaintiffs are informed and believe, and thereon allege, that Defendant Samuel N. Hazen is the CEO of Defendant HCA and a resident of Tennessee. At all relevant times, Samuel N. Hazen had knowledge of the facts alleged herein. Additionally, Samuel N. Hazen was in part responsible for adopting and implementing and did adopt and implement the policies and practices that are challenged in this complaint. Samuel N. Hazen knew or reasonably should have known of the hazardous conditions at RCH and failed to take any action.

26. Plaintiffs are informed and believe, and thereon allege, that Defendant RCH is a limited partnership with its principal place of business in California whose primary business is to operate healthcare facilities in the State of California and the County of Riverside. Plaintiffs are informed and believe, and thereon allege, that Defendant operates in California and Riverside County. At all relevant times, Defendant RCH has done business in California and committed the unlawful acts and omissions alleged in this complaint in California.

27. Plaintiffs are informed and believe, and thereon allege, that Defendant Jackie DeSouza Van Blaricum is the CEO of Defendant RCH and a resident of California. At all relevant times, Jackie DeSouza-Van Blaricum had knowledge of the facts alleged herein. Additionally, Jackie DeSouza-Van Blaricum was in part responsible for adopting and implementing and did adopt and implement the policies and practices that are challenged in this complaint. Jackie DeSouza-Van Blaricum knew or reasonably should have known of the hazardous conditions at RCH and failed to take any action.

28. The true names and capacities of DOES 1 through 100, inclusive, are unknown to Plaintiffs at this time, and Plaintiffs therefore sue such DOE Defendants under fictitious names. Plaintiffs are informed and believe, and thereon allege, that each Defendant designated as a DOE is in some manner responsible for the occurrences alleged herein, and that Plaintiffs' injuries and damages, as alleged herein, were proximately caused by the conduct of such DOE Defendants. Plaintiffs

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

will seek leave of the Court to amend this complaint to allege the true names and capacities of such DOE Defendants when ascertained.

29. Plaintiffs are informed and believe, and thereon allege, that each and every act and omission alleged herein was performed by, and/or attributable to, all Defendants, each acting as agents and/or employee of, and/or under the direction and control of, each of the other Defendants, and that said acts and failures to act were within the course and scope of said agency, employment, and/or direction and control.

30. As a direct and proximate result of the unlawful actions of Defendants, Plaintiffs have suffered, and continue to suffer, economic and other losses in amounts as yet unascertained, but subject to proof at trial, and within the jurisdiction of this Court.

**FACTUAL ALLEGATIONS**

31. COVID-19 is a contagious respiratory disease that can cause fever, dry cough, extreme fatigue, body aches, headache, sore throat, and loss of taste and smell, as well as difficulty breathing and pain or pressure on the chest. In severe cases, COVID-19 can damage organ systems and cause blood clots. (*See* https://www.nytimes.com/article/coronavirus-symptoms.html.) Over 169,000 people in the United States have died from COVID-19 since February 2020 and at least 5.4 million have been infected, although many medical experts estimate that the number of deaths and infections far exceed official tallies. (*See* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.)

32. As of August 17, 2020, there are 47,490 confirmed active cases of COVID-19 in Riverside County out of an estimated 2,470,546 total residents. There have been 912 total COVID-19 deaths in the County, with an additional 409 individuals currently hospitalized. (*See* https://www.rivcoph.org/coronavirus.)

33. COVID-19 disproportionately burdens Latinx people and other racial minorities. The Centers for Disease Control ("CDC") attributes COVID-19's

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

disparate racial impact in part to the fact that nearly a quarter of racial minorities in the United States are employed in essential services industries (including the healthcare industry), compared to 16% of white workers, and that essential workers are at increased risk of COVID-19 infection. (*See* https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html.)

34. As of August 8, 2020, Latinx people represented 58.7% of COVID-19 cases in California and 46.9% of deaths, despite making up only 38.9% of the state's population. In Riverside County, Latinx residents have higher COVID-19 case rates and fatality rates than white residents. Out of every 10,000 Latinx people in the County, approximately 110 have contracted COVID-19, compared to only 44 out of every 10,000 white residents. (*See* https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/Race-Ethnicity.aspx.; https://www.rivcoph.org/coronavirus.)

35. Healthcare workers face the brunt of this racial disparity. According to a recent study, "[h]ealth care workers of color were more likely to care for patients with suspected or confirmed COVID-19, more likely to report using inadequate or reused protective gear, and nearly twice as likely as white colleagues to test positive for the coronavirus." While health care workers as a whole are at least three times more likely than the general public to report a positive COVID test, health care workers of color are five times more likely than the general population to test positive. Ultimately, 62% of the health care workers who have died of COVID-19 have been members of racial minority groups. (*See* https://khn.org/news/health-care-workers-of-color-nearly-twice-as-likely-as-whites-to-get-covid-19/; https://www.thelancet.com/journals/lanpub/article/PIIS2468-2667(20)30164-X/fulltext.)

36. COVID-19 is a highly contagious disease. The easiest way for COVID-19 to spread is through "prolonged exposure" to an infected person,

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

especially without adequate covering of the eyes, nose, or mouth. The risk of infection through spread increases dramatically when individuals are in close physical proximity, particularly indoors and for extended periods of time, and when individuals come into contact with infected persons who sneeze or cough. (*See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/guidance-risk-assesment-hcp.html.)

37. On March 4, 2020, California Governor Gavin Newsom declared a state of emergency and deployed resources to prevent the spread of COVID-19. On March 11, 2020, the World Health Organization ("WHO") declared COVID-19 to be a global pandemic.

38. On March 12, 2020, Riverside County Public Health Officer Dr. Cameron Kaiser ordered "large events" to be canceled in response to the COVID-19 pandemic. On March 25, 2020, Riverside County received an emergency federal medical station from the U.S. Department of Health and Human Services for the purpose of providing 250 additional hospital beds for the treatment of those suffering from COVID-19. (*See* https://countyof-riverside.us/NewsHighlights/TabId/96/ArtMID/487/ArticleID/444/Riverside-County-receives-federal-medical-station-to-increase-hospital-capacity.aspx#gsc.tab=0.)

39. On March 13, 2020, the President of the United States declared a national state of emergency in this country as a result of the disease and its rapid spread. On the same day, Dr. Kaiser ordered all schools closed in Riverside County. On March 19, 2020, Governor Gavin Newsom issued a statewide shelter in place order, directing all California residents to stay home unless they worked for an "essential business" such as a hospital.

40. Several additional local orders followed, including the closure of all golf courses on April 3, and a mandatory county-wide mask and stay-at-home order on April 4. The April 4 order was issued in response to the "rapidly rising number

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

of COVID-19 cases" in Riverside County, and provided that "no gatherings of any number of people may take place outside of family members residing in the same home" and that "everyone [must] wear a face covering when leaving home, including essential workers." (*See* https://countyofriverside.us/News-Highlights/TabId/96/ArtMID/487/ArticleID/451/Riverside-County-Public-Health-Officer-orders-public-to-stay-home-and-cover-face-when-leaving.aspx#gsc.tab=0.)

41. On May 1, Riverside County rescinded its mandatory mask and stay-at-home orders and reverted to the State of California stay-at-home order. On May 8, Riverside County entered "Phase 2" of Governor Newsom's reopening plan, which calls for "[g]radually opening some lower risk workplaces with adaptations at a pace designed to protect public health and safety." (*See* https://covid19.ca.gov/roadmap/.) On May 22, Riverside County accelerated into "expanded Phase 2" of the Governor's plan, which allowed for the reopening of certain "Dine-in" restaurants; Wineries and tasting rooms; Movie theaters; Family entertainment centers; Zoos and museums; [and] Cardrooms." However, due to a spike in COVID-19 cases, bars throughout Riverside County were ordered closed again on June 29, and indoor dining and other select indoor venues were ordered closed again on July 1. (*See* https://www.rivcoph.org/Portals/0/Documents/CoronaVirus/June/News/Bars_to_close_in_Rivco_062920.pdf?ver=2020-06-29-145922-447×tamp=1593467977717; https://www.rivcoph.org/Portals/0/Documents/CoronaVirus/July/News/7.1.20_moving_outdoors_order.pdf?ver=2020-07-01-163235-267×tamp=1593646371386.)

42. The CDC advises that limiting human-to-human contact via physical distancing, to the extent possible in an acute care hospital setting, is the only way to limit COVID-19 infections among healthcare workers and slow the spread of the disease. Preventative measures such as the use of PPE and frequent handwashing

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

and sanitization of commonly touched physical objects are also recommended. (*See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/infection-control-recommendations.html.)

43. The CDC has recognized the heightened risks facing health care personnel ("HCP"),[2] and has released safety guidance for employers operating healthcare facilities to prevent the transmission of COVID-19, including "Interim U.S. Guidance for Risk Assessment and Work Restrictions for Healthcare Personnel with Potential Exposure to COVID-19." (*See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/guidance-risk-assesment-hcp.html.) This is in addition to general guidance that the CDC has issued for all businesses open during the pandemic, such as "Interim Guidance for Businesses and Employers to Plan and Respond to Coronavirus Disease 2019 (COVID-19)." (*See* https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-business-response.html.)

44. According to these guidelines, because HCP regularly come into "extensive and close contact with vulnerable individuals," "a conservative approach to HCP monitoring and applying work restrictions is recommended to prevent transmission from potentially contagious HCP to patients, other HCP, and visitors." The CDC recommends contact tracing and work restrictions for any HCP with "prolonged [a time period of 15 or more minutes] exposure to patients with

---

[2] The CDC defines HCP as "all paid and unpaid persons serving in healthcare settings who have the potential for direct or indirect exposure to patients or infectious materials, including body substances (e.g., blood, tissue, and specific body fluids); contaminated medical supplies, devices, and equipment; contaminated environmental surfaces; or contaminated air." HCP include, but are not limited to, "emergency medical service personnel, nurses, nursing assistants, physicians, technicians, therapists, phlebotomists, pharmacists, students and trainees, contractual staff not employed by the healthcare facility, and persons not directly involved in patient care, but who could be exposed to infectious agents that can be transmitted in the healthcare setting (e.g., clerical, dietary, environmental services, laundry, security, engineering and facilities management, administrative, billing, and volunteer personnel)."

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

COVID-19 when HCP's eyes, nose, or mouth are not covered," or any exposure that "occurs during performance of an aerosol-generating procedure," such as those involving "anatomic regions where viral loads might be higher (e.g., nose and throat, oropharynx, respiratory tract)." The CDC also recognizes that "other exposures not included as higher risk, including having body contact with the patient (e.g., rolling the patient) without gown or gloves … may impart some risk for transmission."

45. The CDC provides guidance for the health and safety of HCP in healthcare facilities, including "Interim Infection Prevention and Control Recommendations for Healthcare Personnel During the Coronavirus Disease 2019 (COVID-19) Pandemic." This guidance includes the following instructions for hospital employees and employers: (1) wear a facemask at all times while in the healthcare facility, including in breakrooms or other spaces; (2) universal use of PPE; (3) create a process to respond to COVID-19 exposures among HCP and others; (4) create a plan for how exposures in a healthcare facility will be investigated and managed and how contact tracing will be performed. (*See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/infection-control-recommendations.html.)

46. The CDC guidelines also provide "recommended infection prevention and control practices when caring for a patient with suspected or confirmed SARS-CoV-2 infection," including the following: (1) personnel entering the room of a patient suffering from COVID-19 should use PPE, in the form of a respirator or facemask, eye protection, gloves, and gowns; (2) once a COVID-19 patient has been discharged, "HCP, including environmental services personnel, should refrain from entering the vacated room until sufficient time has elapsed for enough air changes to remove potentially infectious particles"; (3) hospital management should communicate information about patients with suspected or confirmed infection to appropriate personnel before transferring them to other departments in the facility;

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

and (4) HCP should conduct routine cleaning and disinfection procedures. (*See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/infection-control-recommendations.html.)

47. Additional guidance from the CDC includes "Interim U.S. Guidance for Risk Assessment and Work Restrictions for Healthcare Personnel with Potential Exposure to COVID-19," which is intended to "assist with assessment of risk and application of work restrictions for asymptomatic healthcare personnel (HCP) with potential exposure to patients, visitors, or other HCP with confirmed COVID-19." The CDC recommends that any worker who comes into prolonged (at least 15 minutes) close (within 6 feet) contact with a patient, visitor, or coworker who has a confirmed case of COVID-19, and who is not wearing adequate PPE (including a mask and eye protection), should be excluded from work for 14 days and monitor themselves for symptoms. (*See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/guidance-risk-assesment-hcp.html.) Meanwhile, any other HCP who develop fever or symptoms consistent with COVID-19 should immediately self-isolate and contact their established point of contact. (*Ibid*.)

48. For healthcare workers who have tested positive for COVID-19, the CDC provides "Return to Work Criteria for HCP with SARS-CoV-2 Infection." The CDC recommends a "symptom-based strategy for determining when HCP can return to work" and instructs HCP to return only when "at least 10 days have passed since symptoms first appeared; at least 24 hours have passed since last fever … and; symptoms (e.g., cough, shortness of breath) have improved." (*See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/return-to-work.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fhealthcare-facilities%2Fhcp-return-work.html.)

49. The CDC has set out the following guidance for general industry employers when their workers have been exposed to COVID-19: (1) "Actively encourage sick employees to stay home"; (2) "Separate sick employees …

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

Employees who appear to have symptoms upon arrival at work or who become sick during the day should immediately be separated from other employees, customers, and visitors, and sent home"; (3) "Take action if an employee is suspected or confirmed to have COVID-19 infection … inform employees of their possible exposure to COVID-19 in the workplace." (*See* https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-business-response.html.)

50. Defendants have justified their actions as detailed throughout this Complaint by claiming that they have adhered to applicable CDC guidelines. For example, an RCH manager told Sally Lara, the mother of Plaintiff Vanessa Campos Villalobos, that the hospital was meeting its CDC obligations when Ms. Lara complained that that the hospital was providing adequate PPE only to doctors and nurses, not the rest of the hospital staff. The CDC, however, recommends that PPE should be used "universally" by all HCP in a healthcare facility.

51. In short, Defendants HCA and RCH fell far short of the CDC recommendations. Defendants denied PPE to certain employees—namely EVS workers, one of whom was denied an N95 mask after being ordered to clean the room of a patient suffering from COVID-19. Other EVS workers in the Union's bargaining unit have been verbally abused by RCH supervisors in response to requests for masks and face shields. Defendants have also denied the requests of EVS workers for gowns and hairnets. Sally Lara, mother of Plaintiff Vanessa Campos Villalobos, had to purchase her own masks, gowns, face shields, and booties, and had to do so repeatedly as each item she purchased became ineffective through continuous use. Plaintiff Ray Valdivia requested an N95 or equivalent mask to replace his "Level 1" cloth mask, but his request was denied. Workers in the hospital's Pharmacy Department, also members of the Union's bargaining unit, were denied masks and told to use disposable boot covers as masks.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

52. Defendants failed to promptly inform employees such as Sally Lara and Plaintiffs Ray Valdivia, Vanessa Mondragon, and Gladys Reyes of possible exposure to COVID-19, leading these individuals to unknowingly expose their family and members of the community to the disease. When representatives of the Union requested during a labor-management meeting that Defendants explain or produce their protocol for informing employees of potential COVID-19 exposures, the Union received no response.

53. RCH managers pressured Lab Assistants such as Plaintiffs Vanessa Mondragon and Gladys Reyes to ignore common sense safety precautions—such as the sanitization of equipment required for drawing blood—in the course of their duties, even though such precautions are included in the CDC recommendations and were relayed to these employees by Defendants in training sessions.

54. HCA failed to carry out adequate contact tracing of workers who had exposure to COVID-19 or even tested positive for the disease.

55. With Defendants' knowledge and approval, Plaintiff Ray Valdivia worked a shift at RCH on or around June 29, 2020 after he had tested positive for COVID-19 the prior month and while he still was suffering from symptoms consistent with COVID-19. Mr. Valdivia came in close contact with co-workers, patients, and visitors during this shift. At that time, Defendants were fully aware that the COVID-19 pandemic was raging through Riverside County and the hospital itself, but still decided that it was safe and prudent for Mr. Valdivia to work. This action clearly contravenes the CDC guidelines and common sense.

56. Plaintiff Vanessa Mondragon began feeling symptoms consistent with COVID-19 on July 2 or 3, 2020, tested positive for COVID-19 on July 13, 2020, and was still feeling symptoms as of July 29, 2020. Despite this, Ms. Mondragon was instructed to return to work for her scheduled shift on July 18, 2020. Defendants informed Ms. Mondragon that she need not take a second COVID-19

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

19

FIRST AMENDED COMPLAINT FOR DAMAGES
Case No. 5:20-cv-02054-JWH-KKx

test before returning to work. The CDC recommends that all employees, including HCP, not return to work if they are still feeling symptoms.

57. Plaintiff Gladys Reyes, who tested positive for COVID-19 on June 24, 2020, was instructed to return to work for her scheduled shift on July 21, 2020, despite Ms. Reyes still suffering from symptoms consistent with COVID-19. Defendants informed Ms. Reyes that she need not take a second COVID-19 test before returning to work. Ms. Reyes took a second test anyway, and the result was positive.

58. Defendants are and at all times have been aware of employees working with COVID-19 symptoms and testing positive for COVID-19. Despite this knowledge, Defendants encouraged and instructed employees with COVID-19 symptoms to come to work and failed to warn co-workers or institute additional precautionary measures.

59. Defendants are and at all times have been aware of which employees have worked in close contact with co-workers who were exposed to COVID-19, who displayed COVID-19 symptoms and/or who tested positive for COVID-19. Despite this knowledge, Defendants waited as long as a week after learning of such exposures before telling co-workers who worked or socialized in close proximity with these employees.

60. In one instance, Plaintiff Vanessa Mondragon was never told that she had been exposed to COVID-19, despite working for prolonged periods in close proximity to a coworker who was exposed to the disease, and who had received notice of possible exposure from Defendant RCH. When Ms. Mondragon asked her supervisor about this incident and the disparate treatment between her and her coworker, she was told that it was not “conclusive” that she had been exposed. This action, in the context of Ms. Mondragon’s prolonged exposure to her coworker, directly contravenes CDC recommendations.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

61. Plaintiffs Vanessa Mondragon and Gladys Reyes have been repeatedly assigned to draw blood from patients located in the three "COVID floors" at RCH. At times, there has been only one Lab Assistant/Phlebotomist covering all three of these floors. The Lab Department held team meetings where RCH managers instructed employees to take certain precautions when drawing blood from COVID-positive patients. These precautions included handwashing, cleaning of PPE, including face shields and gowns, and sanitizing all required equipment after drawing each patient. When workers follow all of these precautions, however, the number of blood draws they can take per hour decreases from approximately six (6) patients per hour to approximately two (2) patients per hour. RCH supervisors told Ms. Mondragon and Ms. Reyes that this decrease in efficiency was unacceptable, and that they need not sanitize all of their equipment if they could not meet the prior quota of six blood draws per hour.

62. Plaintiffs Ray Valdivia and Gladys Reyes were placed into prolonged close proximity with patients who they later found out were suffering from COVID-19. At the time, Mr. Valdivia and Ms. Reyes were unaware of these patients' COVID-positive status, and were in fact under the impression that these patients had been "ruled out" as COVID-negative. On at least one occasion, Plaintiff Vanessa Mondragon found out that a patient she had treated was suffering from COVID-19 after she had already drawn blood from a subsequent patient without first taking recommended precautions, including sanitizing her equipment and acquiring a new surgical gown. Ms. Mondragon has drawn blood from patients without knowing they were COVID-positive on multiple occasions. Sally Lara, the mother of Plaintiff Vanessa Campos Villalobos, was often instructed to draw blood from COVID and non-COVID patients in quick succession, without an opportunity to take recommended safety precautions between treatments.

63. Despite Defendants' knowledge of the COVID-19 outbreak, Defendants failed to take measures to prevent the spread of the virus among RCH

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

employees.  When the pandemic began, Defendants provided PPE only to workers in certain patient-facing job classifications, such as physicians and nurses.  After workers complained about this disparate treatment, Defendants began providing masks, gowns, face shields, and gloves to most employees, but required that the equipment be used for multiple days, instructing employees re-use masks and gowns for two or three days at a time, causing the masks to loosen and collect moisture, and causing the gowns to lose elasticity and fall apart.  For many EVS workers, Defendants have never and still do not provide adequate PPE, despite these workers being tasked with cleaning rooms occupied by COVID-19 patients.

64.     While Defendants were aware that employees had tested positive for COVID-19, and that employees such as Plaintiff Ray Valdivia had even worked while suffering symptoms, Defendants did not make any effort to provide adequate PPE to all employees, to provide prompt warnings to co-workers, patients, or visitors with whom sick employees interacted, to perform contact tracing of sick employees, or otherwise to take the reasonably necessary precautions that Defendants knew and should have known at the time were critical to minimize the risk of community spread resulting from their illness and return to work.

65.     Workers such as Sally Lara and Plaintiffs Ray Valdivia and Vanessa Mondragon brought repeated complaints to their respective supervisors regarding insufficient PPE, a lack of contact tracing, pressure to ignore recommended workplace safety precautions, and the lack of prompt notice of exposure.  The repeated refrain from management in response to these complaints has been that Defendants are following CDC guidelines.

66.     As of each employee Plaintiffs' most recent day of work at RCH, Defendants' workplace conditions and practices continued to be inadequate and to pose an ongoing, unreasonably dangerous risk and hazard to the health and safety of those Plaintiffs and all those who live with Plaintiffs and come into contact with Plaintiffs.  Those conditions and practices include but are not limited to

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

Defendants' knowing: (1) failure to regularly provide adequate PPE to all employees, including adequate masks, gloves, and other protective gear; (2) failure to provide any PPE, including N95 masks, to EVS workers; (3) instruction to certain employees tasked with treating patients suffering from COVID-19 that they should ignore common sense precautions, including sanitization of equipment, workstations, and other physical spaces; (4) failure to conduct appropriate contact tracing of all persons known or suspected to have been infected with the COVID-19 virus, including employees; (5) failure to provide adequate warnings and instruction to persons known or suspected to have come in contact with infected employees; and (6) instruction to certain employees who have tested positive, even those still clearly suffering from COVID-19 symptoms, that they should return to work.

67. Plaintiffs are informed and believe, and thereon allege, that Defendant HCA operates various other healthcare facilities in the state of California, and that the unreasonably dangerous practices and conditions at RCH also exist at each of those other facilities and thus threaten the health and safety of the public at or near those facilities and the surrounding communities throughout the State of California.

68. Pursuant to Article 33.1 of the collective bargaining agreement ("CBA") between Plaintiff SEIU-UHW and Defendants HCA and RCH, "the Hospitals will take reasonable steps to provide a safe, secure, clean and therapeutic environment for patients, guests and employees … [and] continue to maintain safety, conduct and workplace violence prevention policies, practices and procedures designed to achieve these goals." Article 33.2 provides that "[n]o employee shall be required to work under conditions that would be hazardous to the employee's physical safety in violation of state or federal safety laws." Article 33.4 of the CBA states that "[d]isputes concerning the conditions of health and safety within the Hospital shall not be subject to the grievance and arbitration procedures of this Agreement."

/ / / /

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

## FIRST CAUSE OF ACTION

**Public Nuisance – Assisting in the Creation of Substantial and Unreasonable Harm to Public Health and Safety that Affects an Entire Community or Considerable Number of Persons [Cal. Civil Code §§ 3479, 3480, 3491, 3493; C.C.P. § 731] (Brought by All Plaintiffs Against All Defendants)**

69. Plaintiffs incorporate herein by specific reference, as though fully set forth, the allegations in paragraphs 1 through 66.

70. California Civil Code § 3479 defines "nuisance" as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, . . . so as to interfere with the comfortable enjoyment of life or property."

71. California Civil Code § 3480 defines "public nuisance" as any nuisance that "affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

72. To constitute a "public nuisance," the offense against, or interference with the exercise of rights common to the public must be substantial and unreasonable. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1103, 1105.)

73. The acts and omissions of Defendants alleged herein, which caused a considerable number of persons to suffer increased exposures and risks of exposures to the COVID-19 virus, including, but not limited to, employees, patients, and visitors of RCH, family members of those employees, patients, and visitors, persons with whom those individuals resided, and the persons with whom those individuals came into contact, substantially and unreasonably created and substantially assisted in the creation of a grave risk to public health and safety, and wrongfully and unduly interfered with Plaintiffs' comfortable enjoyment of their lives and property. (*See County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 305–06.)

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

74. The acts and omissions of Defendants alleged herein substantially and unreasonably created or assisted in the creation of the spread and transmission of grave, life-threatening disease and infection, the risk of spread and transmission of grave, life-threatening disease and infection, and the actual and real fear and anxiety of the spread and transmission of grave, life-threatening disease and infection, all of which constitutes an actionable public nuisance. (*See, e.g.*, Restatement (Second) of Torts § 821B & cmt. g ["[T]he threat of communication of smallpox to a single person may be enough to constitute a public nuisance because of the possibility of an epidemic; and a fire hazard to one adjoining landowner may be a public nuisance because of the danger of a conflagration."]; *Birke v. Oakwood Worldwide* (2009) 169 Cal.App.4th 1540, 1546; *County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 306.)

75. The public nuisance caused by Defendants as alleged herein has caused and will continue to cause special injury to Plaintiffs within the meaning of Civil Code § 3493, due to the infections suffered by three of the five Plaintiffs, the heightened risk of exposures they faced, the lost income they suffered as a result of having to stay home from work, the increased anxiety and fear caused by their need to separate themselves from fellow workers and close family members to minimize the risk of further community spread, and, in the case of Ms. Campos Villalobos, the tragic death of her mother and related financial and emotional losses. Those harms are different from the types of harms suffered by members of the general public who did not work or have direct contact with employees who worked at RCH where multiple employees contracted COVID-19.

76. California Code of Civil Procedure § 731 and California Civil Code §§ 3491, 3493, and 3495 authorize Plaintiffs to bring this action for damages.

77. Defendants' failure to comply with minimum health and safety standards has caused, and is reasonably certain to cause, community spread of the COVID-19 infection. Such community spread has not been, and will not be,

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

limited to the physical location of the hospital or to the employees, patients, and visitors of the hospital, as infected workers have gone home and will go home to interact with their family members, neighbors, and others with whom they must necessarily interact as they undertake essential daily activities such as shopping, medical visits, and childcare. This community spread has resulted in increased disease and will continue to result in increased disease.

78. Defendants' conduct as alleged herein unreasonably interferes with the common public right to public health and safety.

79. Administrative and governmental remedies have proven inadequate to protect Plaintiffs from the harms alleged in this complaint and the wrongful conduct by Defendants alleged in this complaint. OSHA and Cal/OSHA, the principal government agencies tasked with ensuring workplace safety, have deprioritized inspections and enforcement. The CDC, while able to issue recommendations, does not have or exercise enforcement authority against employers that fail to follow those recommendations. Workers in similar situations to Plaintiffs have submitted complaints to public authorities about the public nuisance and public health and safety dangers resulting from their employers' acts and omissions, but have been unable to obtain adequate relief.

80. All Defendants are a substantial contributor to the public nuisance alleged herein.

81. All Defendants' past and ongoing conduct is a direct and proximate cause of the Plaintiffs' injuries and threatened injuries.

82. All Defendants know and should have known that their conduct as alleged herein would be the direct and proximate cause of the injuries alleged herein to Plaintiffs.

83. Defendants' conduct as alleged herein constitutes a substantial and unreasonable interference with and obstruction of public rights and property, including the public rights to health, safety and welfare of the Plaintiffs, and those

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

who come in contact with them, whose safety and lives are at risk due to Defendants' failure to adopt and implement proper procedures for protecting workers, patients, visitors, and others from exposure to the COVID-19 virus.

84. Defendants have committed and continue to commit the acts alleged herein knowingly and willfully.

85. As a proximate result of Defendants' unlawful actions and omissions, Plaintiffs have been damaged in an amount according to proof at trial.

**SECOND CAUSE OF ACTION**

**Unfair and Unlawful Business Practices**
**[Cal. Bus. & Prof. Code §§ 17200 et seq.]**
**(Brought by All Plaintiffs Against All Defendants)**

86. Plaintiffs incorporate herein by specific reference, as though fully set forth, the allegations in paragraphs 1 through 83.

87. Defendants' acts and omissions constituting a public nuisance as alleged herein also constitute unfair and unlawful business practices under California Business and Professions Code §§ 17200 et seq.

88. Defendants' aforementioned acts and omissions constitute business practices in that Defendants have engaged in them repeatedly over a significant period of time and in a systematic manner, to the detriment of the three individual Plaintiffs who are currently employees of Defendants and to Defendants' economic benefit.

89. Defendants' aforementioned acts and omissions have caused economic injury to the three individual Plaintiffs who are employees of Defendant, including but not limited to medical expenses and cost of health care supplies and PPE.

90. Defendants' acts and omissions also violated CDC recommendations. Defendants failed to provide adequate and appropriate PPE to all employees; failed to prohibit employees from entering the hospital if they had COVID-19 symptoms; allowed employees who were sick or symptomatic, or who had been in close prolonged contact with others who were sick or symptomatic to report for work, as

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

opposed to remaining at home and monitoring for COVID-19 symptoms; and directed employees tasked with the treatment of employees suffering from COVID-19 to ignore common sense precautions, such as thoroughly and regularly cleaning and disinfecting commonly used surfaces and areas and cleaning and sanitizing all shared equipment and touchable surfaces between uses.

91. Defendants' actions also constitute "unfair" business practices because they have caused employees of RCH, as well as those employees' family members and other members of the community, to contract COVID-19 infections that could have been avoided through reasonably safe practices.

92. As a result of Defendants' unfair and unlawful business practices, especially their practices of pressuring employees who are suffering from COVID-19 symptoms to return to work and directing employees to ignore common sense safety precautions for purposes of meeting treatment "quotas," Defendants have gained an unfair competitive advantage that they would not have if they adequately protected the health and safety of their employees, patients, visitors, and the public, and have reaped and continue to reap unfair and illegal profits at the expense of Plaintiffs and members of the public. Defendants should be made to disgorge their ill-gotten gains and to restore them to Plaintiffs.

93. As a result of Defendants' unfair and unlawful business practices, Plaintiffs have lost money or property. At least two Plaintiffs have been repeatedly required to purchase their own PPE, including masks, gowns, face shields, and booties. Other Plaintiffs lost out on wages because they contracted COVID-19 as a result of Defendants' insufficient safety practices and had to miss substantial amounts of work.

94. Defendants' unfair and unlawful business practices entitle Plaintiffs to seek disgorgement of profits, interest, penalties, attorneys' fees and expenses pursuant to Code of Civil Procedure § 1021.5, and costs of suit.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

**THIRD CAUSE OF ACTION**

**Negligence**
**[Cal. Civ. Code §1714]**
**(Brought by Plaintiffs Vanessa Campos Villalobos Against All Defendants)**

95. Plaintiffs incorporate herein by specific reference as though fully set forth the allegations in paragraphs 1 through 92.

96. The illness and eventual death of Sally Lara from COVID-19 was a direct and legal result of Defendants' negligence and/or unlawfulness. After Sally Lara contracted COVID-19, everyone who lived in Ms. Lara's household, including Plaintiff Vanessa Campos Villalobos, was exposed to COVID-19 and had a reasonable fear of contracting COVID-19 and suffering related symptoms.

97. Defendants owed a duty of care to Plaintiff Vanessa Campos Villalobos under Cal Civ. Code § 1714 as a member of Sally Lara's household. Where it is reasonably foreseeable that workers, or their clothing and/or personal effects, will act as vectors carrying an infectious disease from the workplace to the worker's home, employers have a duty to reasonably care to prevent this means of transmission. This duty extends to all members of the worker's household. (*See Kesner v. Superior Court* (2016) 1 Cal. 5th 1132.)

98. Defendants breached their respective duties owed individually to Plaintiff Vanessa Campos and collectively to all members of Sally Lara's household by: (1) failing to provide Ms. Lara with sufficient and/or adequate PPE, forcing Ms. Lara to purchase her own PPE, including a mask and gown, and re-use this equipment past the point to which it was effective; (2) instructing Ms. Lara to treat patients suffering from COVID-19 without informing Ms. Lara ahead of time of these patients' COVID-19 status; (3) instructing Ms. Lara to treat COVID-19 patients immediately after she treated non-COVID-19 patients, without giving Ms. Lara sufficient time to take CDC-recommended precautions; and (4) failing to promptly inform Ms. Lara of incidents where she may have been exposed to COVID-19.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

99.     As a direct and legal result of Defendants' actions and/or omissions, Plaintiff Vanessa Campos Villalobos was injured in her health, strength, and/or activity in an amount according to proof at trial.  Additionally and/or alternatively, Ms. Campos Villalobos, along with all other members of Sally Lara's household, suffered a reasonable fear of contracting COVID-19 and experiencing COVID-19 related symptoms.  (*See, e.g.*, *Potter* v. *Firestone Tire & Rubber Co*. (1993) 6 Cal.4th 965; *Kerins* v. *Hartley* (1994) 27 Cal. App. 4th 1062 [reasonable fear of contracting a disease is a compensable injury].)

100.     As a further direct and legal result of Defendants' actions and/or omissions, Plaintiff Vanessa Campos Villalobos has suffered and/or continues to suffer great mental pain and suffering, including worry, emotional distress, anguish, anxiety, and/or nervousness in an amount according to proof at trial.

101.     The potential harm to Plaintiff Vanessa Campos Villalobos and other members of Sally Lara's household as a result of Ms. Lara's exposure to COVID-19 was reasonably foreseeable to Defendants.  It is widely known that COVID-19 is an extremely contagious disease that spreads especially easily among those living in the same household.  Moreover, Defendants have specific medical knowledge beyond that of the general public.

102.     As set forth above and will be shown by proof, there is a high degree of certainty that Plaintiff Vanessa Campos Villalobos has suffered those injuries and damages, and that there is an extremely close connection between those injuries and damages and Defendants' negligent conduct.  The case law cited above as well as the public policy of preventing future harms justifies both the recognition of the existence of a duty of care owed by Defendants to all members of Sally Lara's household, including Plaintiff Vanessa Campos Villalobos, and the imposition of the damages described above.

/ / / /

/ / / /

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

30

FIRST AMENDED COMPLAINT FOR DAMAGES
Case No. 5:20-cv-02054-JWH-KKx

**FOURTH CAUSE OF ACTION**

**Negligent Infliction of Emotional Distress**
**(Brought by Plaintiffs Vanessa Campos Villalobos against All Defendants)**

103. Plaintiffs incorporate herein by specific reference as through fully set forth the allegations in Paragraphs 1 through 100.

104. As set forth above, the suffering and eventual death of Sally Lara from COVID-19 was a direct and legal result of the negligence, carelessness, recklessness, and/or unlawfulness of Defendants, and/or each of them.

105. As a result of the wrongful acts and/or omissions of Defendants, Plaintiff Vanessa Campos Villalobos suffered serious emotional distress. Defendants owed a duty to all members of Sally Lara's household, including Ms. Campos Villalobos, to take reasonable care to prevent transmission of COVID-19, and knew or should have known that Ms. Villalobos would suffer such distress during and as a result of her mother's illness and death. Defendants' wrongful acts and/or omissions were thus a substantial factor in causing Ms. Villalobos' serious emotional distress. (*See, e.g.*, *Marlene F*. v. *Affiliated Psychiatric Medical Clinic, Inc*. (1989) 48 Cal.3d 583, 590.)

106. Additionally and/or alternatively, after the wrongful acts and/or omissions of Defendants resulted in Sally Lara's contraction of COVID-19, Plaintiff Vanessa Campos Villalobos had to go through the horrific and traumatic experience of watching Ms. Lara spend two weeks on a ventilator and then tragically die. Defendants' wrongful acts and/or omissions were thus a substantial factor in causing Ms. Campos Villalobos' emotional distress. (*See, e.g.*, *Thing* v. *La Chusa* (1989) 48 Cal.3d 644.)

107. As a direct and legal result of the wrongful acts and/or omissions of Defendants, Plaintiff Vanessa Campos Villalobos has suffered and will continue to suffer great mental pain and suffering, including emotional suffering, anguish, nervousness, grief, anxiety, worry, shock, and/or other emotional distress in an amount according to proof at trial.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

## FIFTH CAUSE OF ACTION

**Declaratory Judgment**
**[Cal. C.C.P. §1060 et seq.]**
**(Brought by All Plaintiffs Against All Defendants)**

108. Plaintiffs incorporate herein by specific reference as though fully set forth the allegations in paragraphs 1 through 105.

109. An actual controversy has arisen and now exists between the parties relating to the legal rights and duties of the parties as set forth above, for which Plaintiffs desire a declaration of rights and other relief available pursuant to the California Declaratory Judgment Act, C.C.P. § 1060 et seq.

110. A declaratory judgment is necessary and proper in that Plaintiffs contend that Defendants have committed and continues to commit the violations set forth above and Defendants, on information and belief, will deny that they have done so and/or that they will continue to do so.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other persons similarly situated, respectfully pray for relief against Defendants and DOES 1 through 100, inclusive, and each of them, as follows:

1. For a declaration that Defendants have committed a public nuisance and unfair business practices by the wrongful acts, omissions, and practices alleged herein whose commission and omission constitute a public nuisance and unfair business practices;

2. For compensatory damages in an amount to be ascertained at trial;

3. For restitution of all monies due to Plaintiffs as well as disgorged profits from the unfair and unlawful business practices of Defendants;

4. For penalties available under the law;

5. For reasonable attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5, and/or any other applicable provisions providing for attorneys' fees and costs; and

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

6. For such further relief that the Court may deem just and proper.

Dated: October 28, 2020

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

By: /s/ BRUCE A. HARLAND
BRUCE A. HARLAND
WILLIAM T. HANLEY

Attorneys for Plaintiffs SERVICE EMPLOYEES INTERNATIONAL UNION – UNITED HEALTHCARE WORKERS WEST, et al.

150476\1120690

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

33

FIRST AMENDED COMPLAINT FOR DAMAGES
Case No. 5:20-cv-02054-JWH-KKx