JS-6

1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

SERVICE EMPLOYEES
    INTERNATIONAL UNION—
    UNITED HEALTHCARE
    WORKERS WEST;
VANESSA MONDRAGON;
GLADYS REYES;
RAY VALDIVIA; and
VANESSA CAMPOS VILLALOBOS,

        Plaintiffs,

      v.

HCA HEALTHCARE;
SAMUEL N. HAZEN, CEO of HCA
    Healthcare;
RIVERSIDE HEALTHCARE
    SYSTEM L.P. d/b/a RIVERSIDE
    COMMUNITY HOSPITAL; and
JACKIE DeSOUZA-VAN
    BLARICUM, CEO of Riverside
    Community Hospital,

        Defendants.

Case No. 5:20-cv-02054-JWH-KKx

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO REMAND [ECF No. 16] AND DENYING DEFENDANTS' MOTIONS TO DISMISS [ECF Nos. 17 & 18] AS MOOT**

Three motions are presently pending before the Court:  (1) the motion of Plaintiffs Service Employees International Union—United Healthcare Workers West ("SEIU-UHW"), Vanessa Mondragon, Gladys Reyes, Ray Valdivia, and Vanessa Campos Villalobos (collectively, "Plaintiffs") to remand this action to California State Court;[1] (2) the motion of Defendants HCA Healthcare, Samuel Hazen, and Jackie DeSouza-Van Blaricum to dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure and to strike portions of Plaintiffs' Complaint pursuant to Rule 12(f);[2] and (3) the motion of Defendant Riverside Healthcare System L.P. d/b/a Riverside Community Hospital ("RCH") to dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) and 12(b)(6)[3] (collectively, the "Motions").  The Court finds these matters appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the Motions, the Court orders that (1) the Motion to Remand is **GRANTED** in part and **DENIED** in part; and (2) Defendants' respective Motions to Dismiss are **DENIED** as moot.

# I. **INTRODUCTION**

On August 20, 2020, Plaintiff SEIU-UHW, on behalf of its members (including Plaintiffs Vanessa Mondragon, Gladys Reyes, and Raymond (Ray) Valdivia), and Plaintiff Vanessa Campos Villalobos filed their Complaint commencing this action in California State Court.[4]  Plaintiffs assert five claims

---

[1]     Pls.' Mot. to Remand (the "Motion to Remand") [ECF No. 16].  The Court considered the following papers in connection with the Motion to Remand:  (1) Defs.' Notice of Removal (including its attachments) (the "NOR") [ECF No. 1]; (2) Compl. [ECF No. 1-1]; (3) Defs.' Opp'n to Mot. to Remand (the "Opposition") [ECF No. 24]; and (4) Pls.' Reply in Supp. of Mot. to Remand (the "Reply") [ECF No. 25].

[2]     Defs.' Joint Mot. to Dismiss & Mot. to Strike [ECF No. 17].

[3]     Def. RCH's Mot. to Dismiss [ECF No. 18].

[4]     *See generally* Compl. [ECF No. 1-1].

for relief against Defendants:  (1) Public Nuisance; (2) Unfair and Unlawful Business Practices; (3) Negligence; (4) Negligent Infliction of Emotional Distress; and (5) Declaratory Judgment.[5]  The first, second, and fifth claims for relief are asserted on behalf of all Plaintiffs.  The third and fourth claims for relief are asserted individually by Plaintiff Campos Villalobos.

Plaintiffs generally allege that Defendants failed to adopt adequate workplace health and safety measures in response to the ongoing COVID-19 pandemic, which placed RCH employees, including Mondragon, Reyes, Valdivia, and Sally Lara (the late mother of Campos Villalobos), at an increased risk of contracting COVID-19.  This increased risk, according to Plaintiffs, extended to all employees, patients, and visitors of RCH, as well as the members of the broader community with whom these individuals came into contact, and thus created an actionable public nuisance under California law.  Campos Villalobos alleges that her late mother, Sally Lara, who was employed by RCH, was exposed to and contracted COVID-19 while at work, which ultimately caused Lara's death, due to Defendants' negligence.[6]  Campos Villalobos further alleges that Defendants' negligence and her mother's death caused Campos Villalobos to suffer severe emotional distress.[7]

Defendants removed the action to this Court on October 1, 2020, invoking federal question jurisdiction pursuant to 28 U.S.C. § 1331.[8] Defendants contend that Plaintiffs' first, second, and fifth claims for relief arise from, or require the interpretation of the terms of, the Collective Bargaining Agreement and a 2019 "Side Agreement" (jointly, the "CBA") between the

---

[5]     *See generally* Compl.
[6]     *See id.* at ¶¶ 17–19 & 93–100.
[7]     *See id.* at ¶¶ 17–19 & 101–05.
[8]     *See generally* NOR.

parties (except for Campos Villalobos, who was not a party to the CBA).[9]  Thus, according to Defendants, Plaintiffs' first, second, and fifth claims for relief are preempted by § 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185.[10]

As a threshold matter, before reaching the merits of Defendants' respective motions to dismiss, the Court must determine whether it has subject matter jurisdiction over this action.  Therefore, the Court will first address Plaintiffs' Motion to Remand.

## II.  LEGAL STANDARD

### A.    Removal Jurisdiction

Federal courts are courts of limited jurisdiction.  Accordingly, "[t]hey possess only that power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  In every federal case, the basis for federal jurisdiction must appear affirmatively from the record.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).  "The right of removal is entirely a creature of statute and a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress."  *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (internal quotation marks omitted).  Where Congress has acted to create a right of removal, those statutes, unless otherwise stated, are strictly construed against removal jurisdiction.  *See id.*  Unless otherwise expressly provided by Congress, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court."  28 U.S.C. § 1441(a); *see Dennis v. Hart*, 724 F.3d 1249, 1252 (9th Cir. 2013) (same) (internal quotation marks omitted).

---

[9]     *See id.* at ¶ 19.

[10]    *Id.*

-4-

To remove an action to federal court under 28 U.S.C. § 1441(a), the
removing defendant "must demonstrate that original subject-matter jurisdiction
lies in the federal courts." *Syngenta*, 537 U.S. at 33.  In other words, the
removing defendant bears the burden of establishing that removal is proper.  *See*
*Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (noting the
"longstanding, near-canonical rule that the burden on removal rests with the
removing defendant"); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)
("The strong presumption against removal jurisdiction means that the
defendant always has the burden of establishing that removal is proper."
(internal quotation marks omitted)).  Any doubts regarding the existence of
subject matter jurisdiction must be resolved in favor of remand.  *See id.*
("Federal jurisdiction must be rejected if there is any doubt as to the right of
removal in the first instance.").  "In determining the existence of removal
jurisdiction, based upon a federal question, the court must look to the complaint
***as of the time the removal petition was filed***.  Jurisdiction is based on the
complaint as originally filed and not as amended."  *O'Halloran v. Univ. of
Wash.,* 856 F.2d 1375, 1379 (9th Cir. 1988) (emphasis added).[11]

### III.  DISCUSSION

As noted above, Defendants removed the action to this Court pursuant to
28 U.S.C. § 1441, invoking federal-question jurisdiction pursuant to 28 U.S.C.
§ 1331, on the ground that Plaintiffs' claims arise under, or are preempted by,
§ 301 of the LMRA.  Plaintiffs contend that their state law claims are not

---

[11]    Plaintiffs filed a First Amended Complaint (the "FAC") [ECF No. 15] on
October 28, 2020, before filing the instant Motion to Remand.  However, for the
purpose of ruling on Plaintiffs' Motion to Remand, the Court looks to the
complaint as of the time that Defendants removed the action to this Court.
Consistent with this requirement, the court in *O'Halloran* held that the fact that
the plaintiff amended his complaint to include a federal claim after the removal
of the action was "of no significance with regard to removal jurisdiction."
*O'Halloran*, 856 F.2d at 1379.  In any event, here, Plaintiffs' Amended
Complaint does not, on its face, assert any federal claim.  *See generally* FAC.

preempted by the LMRA, and, therefore, they seek the remand of this action for lack of subject matter jurisdiction.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under this rule, the plaintiff is the master of her claim, meaning that she "may avoid federal jurisdiction by exclusive reliance on state law." *Id.* As a general rule, "a case may ***not*** be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* (emphasis in original).

There is, however, a corollary to the well-pleaded complaint rule known as the "complete preemption" doctrine. *Id.* at 393. "On occasion," the Supreme Court has explained, "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65 (1987)). In such cases, any claim based upon the preempted state law is considered a federal claim that "arises under federal law" at its inception. *Id.* Section 301 of the LMRA is among those statutes with such preemptive force.

Section 301 of the LMRA provides as follows:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect of the

-6-

1    amount in controversy or without regard to the citizenship of the

2    parties.

3    29 U.S.C. § 185(a).  Section 301 of the LMRA has been held to preempt any

4    state claim "for violation of contracts between an employer and a labor

5    organization."  *Franchise Tax Board of Cal. v. Construction Laborers Vacation*

6    *Trust for Southern Cal.*, 463 U.S. 1, 23 (1983) (quotations omitted).

7         To determine whether a claim arises from, or is preempted by, § 301 of

8    the LMRA, courts in the Ninth Circuit employ a two-step test.  First, the court

9    must determine "whether the asserted cause of action involves a right conferred

10   upon an employee by virtue of state law, not by a CBA."  *Burnside v. Kiewit*

11   *Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007).  If the answer is "no," then

12   the claim is preempted by § 301 of the LMRA.  *Id.*  If the answer is "yes," then

13   the court must determine whether the claim is "substantially dependent on

14   analysis of a collective-bargaining agreement."  *Id.*  If the state law claim is

15   substantially dependent upon analysis of a CBA, then the claim is preempted by

16   § 301 of the LMRA; "if not, the claim can proceed under state law."  *Id.* at

17   1059–60.

18        Here, the parties agree that Plaintiffs' claims do not involve a right

19   conferred upon Plaintiffs by the CBA.[12]  Therefore, the Court proceeds to the

20   second prong of the *Burnside* test to determine whether Plaintiffs' claims are

21   "substantially dependent" upon interpretation and analysis of the CBA.  *See id.*

22        Determining whether a claim is preempted by § 301 is not "a task that

23   always 'lends itself to analytical precision.'"  *Id.* at 1060 (quoting *Cramer v.*

24   *Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001)).  But a few guiding

25   principles have emerged.  The first is that, in determining whether a particular

26   right arises by virtue of state law or is grounded in the CBA, the court must

27

28   [12]      *See* Motion to Remand 8:4–18; Opposition 11:23–27.

consider "the *legal* character of a claim, as 'independent' of rights under the collective-bargaining agreement [and] not whether a grievance arising from 'precisely the same set of facts' could be pursued." *Id.* (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 121–24 (1994)) (citations and quotations omitted) (emphasis in original).  In this regard, the Supreme Court has made clear that reliance on the CBA as part of a defense to what is plainly a state law claim is not enough "to transform the action into one arising under federal law." *Caterpillar*, 482 U.S. at 399; *see also Burnside*, 491 F.3d at 1060.

The second guiding principle is that, in determining whether a claim is "substantially dependent" upon interpretation and analysis of a CBA, the court must decide whether resolution of the claim requires a "look to," as opposed to an interpretation of, the CBA.  *See Livadas*, 512 U.S. at 125; *Burnside*, 491 F.3d at 1060.  Although this distinction is "not always clear," *Cramer*, 255 F.3d at 691, the Supreme Court has held that a "look to" the CBA—for example, to decide that none of its terms is in dispute or to determine the wage rates agreed to under the CBA to compute a penalty—is not enough to warrant preemption.  *See Livadas*, 512 U.S. at 125.  Ultimately, "when the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."  *Id.* at 124.  "[A] hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim."  *Cramer*, 255 F.3d at 691.  A claim under state law is preempted only "if it is so inextricably intertwined with the terms of a labor contract that its resolution will require judicial interpretation of those terms."  *Allis-Chambers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).

-8-

Applying those principles here, Plaintiffs' first claim for public nuisance is the focus of the Court's inquiry.[13]  Under California law, a nuisance is "[a]nything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, . . . ."  Cal. Civ. Code § 3479.  A public nuisance "is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."  *Id.* § 3480.

A claim for public nuisance has seven factual elements:  (1)  the defendant created a condition or permitted a condition to exist that was, *inter alia*, harmful to health; (2) the condition affected a substantial number of people; (3) an ordinary person would be reasonably annoyed or disturbed by the condition; (4) the seriousness of the harm outweighs the social utility of the defendant's conduct; (5) the plaintiff did not consent to the defendant's conduct; (6) the plaintiff suffered a special injury, *i.e.*, different from the general public; and (7) the defendant's conduct was a substantial factor in causing the plaintiff's harm.  Cal. Civ. Jury Instr. (CACI) No. 2020 (2021).

According to Defendants, because Plaintiffs must prove that Defendants' conduct was unreasonable and that Plaintiffs did not consent to Defendants' conduct, Plaintiffs' claim for public nuisance will necessarily require analysis of what was agreed to under the CBA.[14]  Based upon Plaintiffs' allegations that Defendants' unreasonable conduct includes, for example, instructing employees

---

[13]    Plaintiffs' UCL claim and claim for declaratory relief are derivative of Plaintiffs' public nuisance claim, and, therefore, they are preempted to the same extent, if at all, as the public nuisance claim.  *See* Opposition 18:16–24.  Similarly, the Court must first determine that it has federal question jurisdiction under § 301 of the LMRA before it can exercise supplemental jurisdiction over Plaintiff Campos Villalobos' claims for negligence and negligent infliction of emotional distress, which are purely state law claims that do not involve the CBA to any extent.

[14]    *See* Opposition 12:11–17:16.

1   with COVID-19 symptoms to come to work, Defendants contend that the

2   determination of whether such conduct was reasonable requires analysis of the

3   scope of Defendants' right to set rules for work schedules under various sections

4   of the CBA.[15]  Defendants make similar arguments with respect to Plaintiffs'

5   allegations regarding Defendants' alleged failure to warn of the risk of possible

6   exposure to COVID-19,[16] failure to provide adequate protective equipment,[17]

7   failure to provide information regarding COVID-19 safety protocols,[18] and

8   Defendants' alleged unreasonable instruction regarding extra sanitization

9   precautions in relation to blood draws.[19]

10          There appears to be no authority addressing whether a state law public

11   nuisance claim asserted by parties who are subject to a CBA is preempted by

12   § 301 of the LMRA.  However, the legal character of a public nuisance claim

13   suggests that it is not.  Whether a given interference is unreasonable is judged

14   under an objective standard:  "the question is not whether the particular plaintiff

15   found the invasion unreasonable, but 'whether reasonable persons generally,

16   looking at the whole situation impartially and objectively, would consider it

17   unreasonable.'"  *San Diego Gas & Electric Co. v. Superior Ct.*, 13 Cal. 4th 893,

18   938 (1996) (quoting Restatement (Second) of Torts § 826, cmt. c (Am. L. Inst.

19   1979)).  Indeed, as Plaintiffs point out, the legal right implicated by a public

20   nuisance claim is the right of the public to be free from unreasonable

21   interference with health and safety.  *See Venuto v. Owens-Corning Fiberglass*

22   *Corp.*, 22 Cal. App. 3d 116, 123 (1971).  That right arises under state law—not

23   from the terms of a CBA.  Nor is it substantially dependent upon analysis of the

24

25   [15]     *Id.* at 14:10–15:3.

26   [16]     *Id.* at 15:4–22.

27   [17]     *Id.* at 15:23–16:8.
      [18]     *Id.* at 16:9–22.

28   [19]     *Id.* at 16:23–17:16.

1    CBA in this case.  Consistent with this principle, the Ninth Circuit has

2    recognized that "protecting worker safety," among other worker rights,

3    "remains well within the traditional police power of the states."  *Alaska Airlines,*

4    *Inc. v. Schurke*, 898 F.3d 904, 919 (9th Cir. 2018).  This well-established rule

5    obviates any need for the Court to interpret the scope of the CBA.[20]

6         Plaintiffs plainly allege that Defendants' conduct, regardless of the CBA,

7    objectively constitutes an unreasonable interference in public health and safety.

8    Defendants raise the terms of the CBA as a defense to Plaintiffs' allegations

9    regarding Defendants' alleged unreasonable conduct.  However, "the presence

10   of a federal question, even a § 301 question, in a defensive argument does not

11   overcome the paramount policies embodied in the well-pleaded complaint rule."

12   *Caterpillar*, 482 U.S. at 398.  This is true even when "a defense to a state claim

13   is based on the terms of a collective-bargaining agreement" and, thus, will

14   require the state court "to interpret that agreement to decide whether the state

15   claim survives."  *Id.*  Ultimately, "the plaintiff is the master of the complaint,"

16   and, for federal jurisdiction to be proper, "a federal question must appear on the

17   face of the complaint."  *Id.* at 398–99.  Indeed, "the plaintiff may, by eschewing

18   claims based on federal law, choose to have the cause heard in state court," and

19   a defendant cannot "merely by injecting a federal question into an action that

20   asserts what is plainly a state-law claim, transform the action into one arising

21   under federal law, thereby selecting the forum in which the claim shall be

22   litigated."  *Id.*  Otherwise, the Supreme Court has explained, "the plaintiff

23   would be master of nothing."  *Id.*

24

25   _____

26   [20]    The parties each cite § 33.4 of the CBA, and Defendants purport to
     dispute the scope of this section and whether it applies to Plaintiffs' claims here.
27   However, the Court need not decide this issue because Plaintiffs do not invoke
     § 33.4 as the basis for their public nuisance claim.  Plaintiffs' right, and the right
28   of the general public, to be free from unreasonable interference in their health
     and safety arises from state law, not from the terms of the CBA.

Here, no federal question appears on the face of the Complaint, and the Court is not persuaded that Plaintiffs' claim for public nuisance is so "inextricably intertwined" with the terms of the CBA that the claim is preempted by § 301 of the LMRA.  Accordingly, the Court finds that there is no federal question jurisdiction over this action.

### A.   Plaintiffs' Request for Attorneys' Fees

Plaintiffs request attorneys' fees because, in their view, Defendants' removal of the action to this Court was unreasonable.  As a general rule, "[a]bsent unusual circumstances, courts may award attorney's fees under [28 U.S.C.] § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140–41 (2005).  As confident as Plaintiffs may be in their arguments, in view of the relatively novel issues presented in this case, the Court cannot find that Defendants' removal of the action was unreasonable.   There are no authorities on the issue of whether a public nuisance claim is preempted by § 301 of the LMRA, and, even though the Court makes no finding regarding the scope of § 33.4 of the CBA, the Court does not consider that section to be so clear as to make Defendants' decision to remove the action objectively unreasonable. Thus, Defendants had a reasonable basis for removing this case to federal court.

## IV. CONCLUSION

Based upon the foregoing, the Court hereby **ORDERS** as follows:

1.     Plaintiffs' Motion to Remand is **GRANTED in part** (with respect to remand) and **DENIED in part** (with respect to Plaintiffs' request for an award of attorneys' fees).

2.     This case is **REMANDED** to Riverside County Superior Court.

-12-

3.    Defendants' respective Motions to Dismiss are **DENIED** as moot.

**IT IS SO ORDERED.**

Dated: June 7, 2021

John W. Holcomb
UNITED STATES DISTRICT JUDGE